STATE OF NORTH CAROLINA v. NOEL SHANE HARREN

No. 120

(Filed 27 January 1981)

1. **Criminal Law § 91— speedy trial act — calculation of time excluded for mental examination**

State v. Harren

In calculating the time to be excluded for a mental examination of defendant in computing the time within which the trial of defendant must begin under the speedy trial statutes, the first day of the applicable period should be excluded and the last day of the period should be included.

**2. Criminal Law § 91— speedy trial act — excludable delay for mental examination of defendant**

In calculating the time within which a criminal trial must begin under the speedy trial act, the excludable delay permitted by G.S. 15A-701(b)(1)(a) for a mental examination of defendant runs from the date of entry of the order of commitment to the date the report of the mental examination becomes available to both defendant and the State.

**3. Criminal Law § 66.4— tentative lineup identification — admissibility**

A rape victim's testimony concerning her pretrial lineup identification of defendant and the testimony of a police officer who corroborated that testimony was not rendered inadmissible because the victim's identification of defendant at the lineup was tentative, since the tentative nature of the lineup identification went only to the weight that the jury might place upon it and not to its admissibility.

**4. Burglary and Unlawful Breakings § 5.1; Rape § 5— identification testimony — fingerprints — sufficiency of evidence of burglary and rape**

An 11 year old rape victim's tentative identification of defendant as her assailant and expert testimony that fingerprints lifted from the inside frame of the bedroom window where the victim's assailant entered matched defendant's fingerprints were sufficient to be submitted to the jury on issues of defendant's guilt of first degree burglary and first degree rape.

Justice MEYER did not participate in the consideration or decision of this case.

APPEAL by defendant from *Gaines, J.*, 31 March 1980 Criminal Session of MECKLENBURG County Superior Court.

Defendant was charged in separate bills of indictment with first-degree burglary and with the first-degree rape of a child under twelve years old. The trial court consolidated the charges for trial, and defendant entered a plea of not guilty to each charge.

The State's evidence tended to show that on the night of 18 July 1979, Peyton Elam, 11, was awakened by a man in her bedroom. Miss Elam testified that she first saw the man beside her bed pulling his pants down. The man put a pillow over her face, preventing her from either seeing him well or screaming, got on top of her and had intercourse with her.

The prosecuting witness testified that her assailant was a white man with short hair. His body was medium and his stomach was "kind of big." She had never seen the man before. She stated

that there was enough light from a street lamp for her to see the things she had described about the man. The man left the bedroom through a window. After he left, the child went to her mother's room to tell her what had happened. Her mother called the police. The prosecuting witness testified that she had never had intercourse before that night. Other State witnesses corroborated her testimony by testifying to statements previously made by her.

The trial court allowed defendant's motion to suppress an in-court identification by Miss Elam. However, over defendant's objection and, after a *voir dire* hearing, the trial court permitted the victim to testify concerning an out-of-court lineup identification of defendant. A police officer corroborated Miss Elam's account of the lineup. A fingerprint expert also testified that two fingerprints on the inside frame of the bedroom window where the entry occurred matched defendant's fingerprints.

The defendant did not present any evidence.

The jury returned a verdict of guilty to each of the charges. The judge consolidated the cases for judgment and sentenced defendant to life imprisonment. Defendant appealed to this Court as a matter of right pursuant to G.S. 7A-27(a).

*Rufus L. Edmisten, Attorney General, by Thomas H. Davis, Jr., Assistant Attorney General, for the State.*

*Peter H. Gerns for defendant-appellant.*

BRANCH, Chief Justice.

Defendant first assigns as error the failure of the trial court to grant his motion to dismiss because of violation of his statutory right to a speedy trial. The applicable section of the speedy trial act, G.S. 15A-701(b)(1)(a) provides:

> (b) The following periods shall be excluded in computing the time within which the trial of the criminal offense must begin:
>
> (1) Any period of delay resulting from . . . proceedings concerning the defendant including . . .
>
>   (a) A . . . mental examination of the defendant . . .

The following dates are important in deciding whether exclud-

able defense delays reduce the total passage of time from indictment to date of trial to less than 120 days:

27 August 1979 — Indictment handed down.

25 September 1979 — Order for mental examination of defendant.

5 October 1979 — Defendant taken to hospital for examination.
19 October 1979 — Defendant returned to jail from hospital.

26 October 1979 — Defense continuance granted until 2 November 1979.

1 November 1979 — Clerk notified District Attorney that mental examination report was in clerk's office.

25 January 1980 — Defense continuance granted until 4 February 1980.

At the hearing held on 7 February 1980, Judge Gaines found that after deducting the net excludable delay only 119 days had elapsed between the return of the indictment and the commencement of the trial.

The key to the question presented by this assignment of error lies in the determination of the correct time to be excluded for the mental examination. It was stipulated that 165 days had elapsed between the bringing of the indictment and the date that the case was called for trial. Both defendant and the State in their computation of time elapsed used nine days as the net excludable delay for continuances granted to defendant.

[1] Defendant argues that we should adopt the time rule which excludes the first day of any legal period and includes the last day in calculating the time period. We agree. This rule is consistent with our civil rule. G.S. 1A-1, Rule 6(a). We see no reason why this well-recognized rule should not be employed in criminal cases.

[2] Defendant argues that the time to be excluded for the mental examination should run from 25 September 1975 (date of the order authorizing the mental examination) to 19 October 1979 (date of defendant's return from hospital custody to jail custody). Using this approach, there would have been 24 days excludable by reason of the mental examination and 9 days net excludable delay because of continuances granted defendant. When computed in accordance

State v. Harren

with the rules set forth above, 132 days would have elapsed between the return of the indictment and the date defendant was brought to trial. Defendant therefore contends that his case should have been dismissed pursuant to the provisions of G.S. 15A-703.

The record does not disclose the method of computation used by the trial judge. However, the result reached by him indicates that he determined the time continued to run until the date that both defendant and the State had access to the report of the mental examination. Thus, Judge Gaines' computation included nine days net excludable delay by reason of continuances for defendant and 37 days excludable delay due to the mental examination. The difference between the sum of the excludable delays found by Judge Gaines and the time stipulated to have elapsed (165 days) was 119 days and within the statutory limitation.

In our opinion, the broad language of G.S. 15A-701(b)(1)(a) does not restrict the excludable period to the period of time a person is actually in custody of the hospital. Indeed, defendant does not contend that such a restrictive meaning was intended by the Legislature. This is evidenced by inclusion in his calculation of the time period which elapsed after the order was entered but before he was delivered to the custody of the hospital. However, he arbitrarily used the date he was released from hospital custody and placed in jail custody as the cutoff period for the period of excludable delay because of his mental examination. We are of the opinion that the same rationale which supports excluding the period between the order and the transportation of defendant to the hospital also supports the exclusion of the time period between the return of defendant to jail and the date the mental examination report is available to the parties. The rationale for exclusion of the time between the order and transportation of defendant to the hospital is that the State cannot bring the defendant to trial during this time period because to do so would deprive him of the benefit of the mental examination. This rationale applies equally to the time between defendant's return from the hospital and the date of the availability of the mental examination. The State could not properly bring defendant to trial during this time period, for to do so would similarly deprive him of the benefit of the mental examination. We therefore hold that the excludable delay due to a mental examination of a defendant runs from the date of entry of the order of committment to the date the report becomes available to both de-

fendant and the State.

We note that in oral argument before this Court, defendant's counsel contended that the report was available to both defendant and the State much earlier than the notice from the Clerk of the Superior Court indicates. We are unable to find substantiation for this argument in the record. Our examination of the record discloses that the only evidence concerning the availability of the report is the notice from the Clerk's office. We do not decide that this is the only type of evidence which can be introduced to show the availability of the report. We only conclude that, since the Clerk's report was the only evidence of the availability of the report, this evidence is determinative.

We therefore hold that the trial judge properly denied defendant's motion to dismiss.

[3] Defendant consolidates his second and third assignments of error for argument. He challenges the admissibility of the testimony of the prosecuting witness concerning her pretrial lineup identification of defendant and the testimony of a police officer who corroborated that testimony.

Before trial defendant moved to suppress the in-court identification of defendant by the prosecuting witness. At a hearing on this motion, the court heard testimony concerning the circumstances surrounding the prosecuting witness's observation of defendant at the time of the burglary and rape. The testimony offered was consistent with that set forth in our statement of facts.

After finding facts, the court concluded that the identification was not independent of the pretrial identification and allowed defendant's motion to suppress the in-court identification. We note that the findings of fact that supported the ruling were unchallenged.

At trial, when it appeared that the State was about to offer evidence of the pretrial lineup procedures, defense counsel objected and the court excused the jury and conducted a *voir dire* hearing concerning the admissibility of that evidence. The testimony offered on *voir dire* tended to show that on 26 August 1979, police held a lineup at the Mecklenburg County Law Enforcement Center. Defendant was represented by counsel at the lineup. Members of the public defender's office and defendant himself chose the six

men who participated in the lineup. Defendant's former attorney, who represented him at the lineup, testified that he could not recall anything suggestive about the lineup procedure. According to contemporary notes he made at the lineup, the former defense lawyer reconstructed the following colloquy which occurred between the assistant district attorney directing the lineup and Miss Elam at the lineup:

> ASSISTANT DISTRICT ATTORNEY: Can you identify anyone as the person who was in your home or broke into your home?
>
> MISS ELAM: I am not sure but I think it's No. 2.
>
> ASSISTANT DISTRICT ATTORNEY: Are you sure or not?
>
> MISS ELAM: Kind of in-between.

The defendant was in position number two in the lineup.

After finding facts, including a finding that there was nothing impermissibly suggestive about the pretrial procedure, Judge Gaines overruled defendant's objection. Over defendant's objection, the State then offered evidence before the jury concerning the pretrial lineup procedure.

At trial and before this Court, defendant has argued that the tentative nature of the prosecuting witness's identification at the lineup required the suppression of this testimony under the "totality of the circumstances" test in *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed. 2d 401 (1972). The test set forth in that case is whether under the "totality of the circumstances" the in-court identification was reliable even though the confrontation procedure was impermissibly suggestive.

Defendant's reliance on *Neil v. Biggers, supra*, is misplaced. In *Manson v. Braithwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed. 2d 140 (1977), the United States Supreme Court recognized that a challenge to the admissibility of identification testimony requires (1) an impermissibly suggestive procedure and, if one is found, then (2) consideration of the *Neil v. Biggers* factors to determine whether

the taint is purged.[1] *See also State v. Headen*, 295 N.C. 437, 245 S.E. 2d 706 (1978).

Here defendant has not demonstrated the existence of the first requirement as set forth in *Manson v. Braithwaite, supra,* because nothing in the record supports a finding that the pretrial procedure was impermissibly suggestive. Neither does the suppression of the in-court identification affect the pretrial procedure. The only vice in the challenged identification is that it was tentative. The identification, however, was relevant and its tentative nature went to the *weight* that the jury might place upon it and not to its admissibility. The trial judge correctly admitted the testimony of the prosecuting witness concerning the pretrial lineup procedure and properly admitted the testimony offered in corroboration.

**[4]** Defendant next assigns as error the trial judge's denial of his motion for nonsuit. Relying on *State v. Clyburn*, 273 N.C. 284, 159 S.E. 2d 868 (1968), he argues that the equivocal identification testimony was not sufficient to carry the case to the jury. *Clyburn* is distinguishable from the case before us. In *Clyburn* the *only* evidence linking the defendant to the crime was the testimony of an eyewitness. That witness testified that he could not "honestly say . . ." that defendant was one of the men who consulted him. In the case *sub judice*, Miss Elam's tentative identification of defendant is *not the only* evidence linking defendant to the crime. Here, a fingerprint expert testified that fingerprints lifted from the inside frame of the bedroom window where the victim's assailant entered matched defendant's fingerprints. According to the officer who found the prints, they could have been no older than ten to fourteen hours. We hold that when considered in the light most favorable to the State, as we must, the combination of the identification testimony and the fingerprint evidence was sufficient to repel defendant's motion for judgment of nonsuit.

Finally, defendant assigns as error the admission into evidence of the testimony of Officer C. H. Van Hoy concerning his prearrest investigation.

---

[1] The factors cited in *Neil v. Biggers, supra,* are (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness's degree of attention, (3) the accuracy of the witness's prior description of the criminal, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation.

This assignment of error does not conform to the requirements of Rule 10(c) in that it is not confined to a single issue of law. *State v. Kirby,* 276 N.C. 123, 171 S.E. 2d 416 (1970). However, we have carefully examined every argument properly supported by exception and find that even if the questioned evidence were inadmissible, defendant has failed to carry the burden of showing that had the challenged evidence been excluded a different result would have been reached. G.S. 15A-1443(a). *State v. Hudson,* 295 N.C. 427, 245 S.E. 2d 686 (1978). This assignment of error is overruled.

We have carefully examined this entire record and find that defendant has been accorded a fair trial free of prejudicial error.

No error.

Justice MEYER did not participate in the consideration or decision of this case.