In the
 Missouri Court of Appeals
 Western District
 SCOTT W. ECKERT, )
 )
 Appellant, ) WD83749
 )
 v. ) OPINION FILED:
 ) September 7, 2021
 STATE OF MISSOURI, )
 )
 Respondent. )

 Appeal from the Circuit Court of Livingston County, Missouri
 The Honorable Daren L. Adkins, Judge

 Before Division Four: Cynthia L. Martin, Chief Judge, Presiding, Gary D. Witt, Judge
 and Roy L. Richter, Special Judge

 Scott William Eckert ("Eckert") appeals from a judgment denying his Rule 29.15

motion for post-conviction relief after an evidentiary hearing. Eckert contends that the

motion court clearly erred in denying his claim that trial counsel was ineffective for failing

to file a motion to dismiss three counts of victim tampering because he was not brought to
trial within the time required by the Uniform Mandatory Disposition of Detainers Law

("UMDDL").1 Finding no error, we affirm.

 Factual and Procedural Background2

 On December 2, 2011, the State filed a criminal complaint against Eckert alleging

felony victim tampering, which included a probable cause statement and a warrant. When

the complaint was filed, Eckert was already in the custody of the Missouri Department of

Corrections serving a life sentence for his convictions of forcible rape, first-degree

statutory rape, tampering with physical evidence, and two counts of endangering the

welfare of a child.

 On October 15, 2013, Eckert filed an Inmate's Request for Disposition form

("Request for Disposition"), seeking a final disposition of three counts of felony victim

tampering presumably set forth in the criminal complaint.3 Eckert appeared before the

court on November 6, 2013, without counsel. His matter was then set for hearing on

December 4, 2013. On December 4, 2013, the State filed an information formally charging

Eckert with three counts of victim tampering. On the same date, Eckert appeared with an

attorney and waived a preliminary hearing, and the matter was bound over for trial on

December 10, 2013.

 1
 Sections 217.450 to 217.485. All statutory references are to RSMo 2012, as supplemented through the
date that Eckert filed his Request for Disposition, unless otherwise noted.
 2
 In addition to the record generated from Eckert's underlying post-conviction proceeding, this Court
sustained Eckert's motion to include in the record on appeal the record in WD82214 (Eckert's appeal from the initial
disposition of his postconviction claim which resulted in a remand for a finding on the issue of abandonment), and
the record in WD78163 (Eckert's direct appeal from his victim tampering convictions).
 3
 The complaint has not been made a part of the record on appeal.

 2
 On December 10, 2013, Eckert waived formal arraignment, entered a plea of not

guilty, and requested a continuance. Over the State's objection, the trial court continued

the matter to January 14, 2014 for a plea or trial setting. On January 14, 2014, Eckert

requested another continuance and the trial court scheduled a "Plea/Trial Setting" for

January 28, 2014.

 On January 27, 2014, the day before trial, Eckert's counsel filed a "Motion to

Dismiss for Failure to Charge an Offense."4 The motion to dismiss questioned whether

Eckert could be charged with victim tampering based on letters he wrote after he had

already been convicted of crimes involving the victim. When the parties appeared for the

trial setting on January 28, 2014, the State requested time to file a response to the motion

to dismiss as follows:

 [The State]: The motion came in yesterday, I've just reviewed it, and I think
 that rather than stand and give oral arguments I would prefer a brief and the
 Court to rule on the bench, and then if you -- if the Court requires further oral
 argument, I would not object to setting a new date, but I would like to brief
 the motion before it's argued, Your Honor.

 [Eckert's counsel]: And I have no objection to that.

 [Trial court]: . . . So, do you have any objection to [the court] taking [judicial]
 notice of those [cases]?5

 [Eckert's counsel]: I have no objection, Your Honor.

 [Trial court]: All right. So[,] I'll take judicial notice of [those cases] . . . .
 Everybody agreed on that?

 4
 There is a docket entry indicating that Eckert also filed a pro se "Motion to Dismiss for Failure to State
Offense and Other Irregularities" on January 9, 2014; however, this motion was not included in the record on appeal.
The record suggests that the motion to dismiss filed by Eckert's counsel on January 27, 2014 was intended to
supersede the pro se motion.
 5
 The State had asked the trial court to take judicial notice of the files in Eckert's underlying criminal case,
in Eckert's pending post-conviction claim from that case, and in the pending victim tampering case.

 3
[The State]: Yes.

[Eckert's counsel]: Yes, Your Honor.

[Trial court]: And I believe you'd agreed -- did you have -- I notice in your
motion that you . . . accepted the facts in the Statement of Probable Cause for
the purposes of the motion.

[Eckert's counsel]: For purpose of this hearing[,] we accept all the statements
in the probable cause, Your Honor.

[Trial court]: All right. So[,] I'll take notice of that including the file. And
then I will allow the parties -- do you agree we'll allow 30 days for briefing?

[Eckert's counsel]: I do.

[Trial court]: All right.

[The State]: I'm agreeable to the [30-day] response.

[Trial court]: All right. So[,] it's your motion; who's briefing first?

[The State]: Well[,] I'm going to brief first since I carry the burden.

[Trial court]: All right.

[The State]: Some of her brief, it's already present in her motion.

[Trial court]: Okay. So[,] I'll find the State will provide its brief within 30
days and then make a docket entry requiring the defendant to provide any
brief that he wants to within 30 days after that.

[Eckert's counsel]: That would be fine with me, Your Honor.

[Trial court]: All right. Did you hear all of this, Mr. Eckert?

[Eckert]: Most of it.

[Trial court]: Okay, here's what's going on, I'll recap. . . . I'm going to take
[the motion to dismiss] under -- well it's not really under advisement yet
because I'm going to allow briefing, and I'm going to allow the State 30 days
to submit its brief, then I'll allow your attorney another 30 days after that to

 4
 submit your brief, and then after that it will then be under advisement, and
 I'll take it into consideration after I receive both of those briefs. Or[,] if either
 party decides to waive briefing, just let us know, and at that point I'll consider
 it under advisement and move ahead. Do you have any questions, Mr.
 Eckert?

 [Eckert]: No, sir, I don't.

 Following the hearing, the trial court reflected the parties' agreement with the

following docket entry:

 . . . Defendant's Motion to Dismiss is called up for hearing. Parties agree [the]
 court may take judicial notice of this file, [Eckert's underlying criminal case,
 and his pending post-conviction claim relating to that case]. Parties agree
 that [the court] will issue [a] facts of probable cause statement (for purposes
 of this motion only). [The] State may submit [a] brief within 30 days; and
 Defendant 30 days thereafter.

 On March 17, 2014, the State filed its brief opposing the motion to dismiss. On

April 25, 2014, Eckert filed a response to the State's brief. On May 23, 2014, the trial court

entered an order denying Eckert's motion to dismiss, which stated:

 On January 28, 2014, [the] State appeared by [Prosecuting Attorney];
 Defendant appeared by polycom video appearance and in the Livingston
 County Courtroom by his [attorney]; the Court took up for hearing the
 Defendant's Motion to Dismiss; and allowed the parties additional time to
 brief the issues. Briefing was completed on April 25, 2014.

 Having considered the Motion, arguments, and briefs of the parties,
 Defendant's Motion to Dismiss is overruled and denied.

The trial court also directed the parties to appear on June 10, 2014, and on that date, a trial

setting was discussed:

 [Eckert's counsel]: We'd like to set this for jury trial.

 [Trial court]: All right. How long do you think it will take to try?

 [The State]: One day, Your Honor.

 5
 [Trial court]: All right. How far out do you wish to set it?

 [The State]: Well, Your Honor, we need to set it quickly. This is a case that
 has had a writ, and although there has been a pending motion that was ruled
 upon this last month, I think there were some delays in getting it set.

 [Trial court]: All right. So sooner rather than later?

 [Eckert's counsel]: Yes, Your Honor.

 [The State]: I really do think we need to set it in July.

 [Eckert's counsel]: I think it's within less -- I believe we have less than 60
 days left.

 [Trial court]: All right. How about July the 18th?

 [The State]: Got it.

 [Eckert's counsel]: Yes.

 The State filed an amended information on June 18, 2014. The amended information

alleged that Eckert committed three counts of felony victim tampering in violation of

section 575.270. On July 18, 2014, following a jury trial, Eckert was convicted on all three

counts of victim tampering. Eckert's conviction was affirmed on direct appeal. State v.

Eckert, 491 S.W.3d 228 (Mo. App. W.D. 2016).

 Eckert filed a timely pro se motion for post-conviction relief pursuant to Rule

29.15.6 Appointed counsel filed an untimely amended motion ("Amended Motion"). The

motion court denied the claims in the Amended Motion by judgment dated September 19,

2018. In Eckert v. State, 591 S.W.3d 903, 905-07 (Mo. App. W.D. 2019), this Court

 6
 All Rule references are to Missouri Court Rules, Volume I--State, 2016, as supplemented and as applicable
at the time Eckert's 29.15 motion was filed, unless otherwise indicated.

 6
reversed the motion court's judgment, and remanded for an independent inquiry into

whether Eckert was abandoned by appointed counsel. On remand, the motion court

determined that Eckert had been abandoned by appointed counsel, and that the merits of

the untimely filed Amended Motion should therefore be considered.

 Eckert's Amended Motion argued, inter alia, that trial counsel was ineffective for

failing "to move to dismiss the charges against [Eckert], because the [State] brought

[Eckert] to trial 31 days after the 180-day time period concluded after [Eckert's] filing

demanding a trial under the [UMDDL]." Following an evidentiary hearing, the motion

court entered its judgment ("Judgment"), which included findings of fact and conclusions

of law, denying all of the claims in Eckert's Amended Motion.7 With respect to the claim

that is at issue in this appeal, the motion court found:

 The review of the request for disposition on detainers appears before this
 court without being raised before. [Eckert] filed his request on October 15,
 2013. The trial of [Eckert] was held July 18, 2014. Both Movant and trial
 counsel [] testified and the court finds that the trial was delayed for several
 defense requested matters including [Eckert's] request for appointed counsel
 [Docket entry 11/06/2013] and [Eckert's] motion to dismiss [Docket entry
 1/27/2014]. The docket reflects and the Court finds that the Movant made at
 least one request for continuance in order to be adequately prepared for trial
 which was objected to by the State [Docket entry 12/10/2013].

(internal citations omitted). The motion court concluded that Eckert had not established

that trial counsel's failure to seek dismissal of his charges fell below an objective standard

of reasonableness, "nor was [the claim] supported by fact or law" because "Movant

 7
 The motion court denied the Amended Motion for the same reasons set forth in its original judgment filed
September 19, 2018, explaining that "[n]either [Eckert] nor [the State] adduced any additional information,
argument nor evidence as to the underlying amended motion."

 7
requested the time which delayed his trial, filed motions which delayed his trial, and

consented to the trial date, and said delays tolled the UMDDL such that the trial fell within

the required 180-day time period." The motion court also concluded as to all of the claims

asserted in the Amended Motion that Eckert failed to prove that he had been prejudiced by

the allegedly deficient performance of trial counsel as he "failed to prove there is a

reasonable probability that the outcome of the trial would have been different, but for any

(or all) the alleged failures or inadequacies."

 Eckert appeals.

 Standard of Review

 "Appellate review of the [motion] court's action on [a] motion filed under . . .

Rule 29.15 shall be limited to a determination of whether the findings and conclusions of

the [motion] court are clearly erroneous." Rule 29.15(k). "A judgment is clearly erroneous

when, in light of the entire record, the court is left with the definite and firm impression

that a mistake has been made." West v. State, 605 S.W.3d 607, 610 (Mo. App. W.D. 2020)

(quoting Shockley v. State, 579 S.W.3d 881, 892 (Mo. banc 2019)).

 Analysis

 Eckert's single point on appeal argues that the motion court committed clear error

when it denied his claim that trial counsel was ineffective for failing to move to dismiss

the victim tampering charges due to a violation of the UMDDL. Specifically, Eckert

alleges that the 180-day time period permitted by the UMDDL should not have been tolled

following the January 28, 2014 hearing on his motion to dismiss, and that the correct

 8
calculation establishes that his July 18, 2014 trial occurred 46 days after the permitted 180-

day time period, as properly tolled, expired.8

 "To be entitled to post-conviction relief for ineffective assistance of counsel, a

movant must show by a preponderance of the evidence that his or her trial counsel failed

to meet the Strickland test in order to prove his or her claims." Davis v. State, 486 S.W.3d

898, 905-06 (Mo. banc 2016) (citing Strickland v. Washington, 466 U.S. 668 (1984)).

"Under Strickland, Movant must demonstrate that: (1) his trial counsel failed to exercise

the level of skill and diligence that a reasonably competent trial counsel would in a similar

situation, and (2) he was prejudiced by that failure." Id. (citing Strickland, 466 U.S. at

687). Counsel cannot be deemed ineffective for failing to file a non-meritorious motion.

Harris v. State, 475 S.W.3d 227, 230 (Mo. App. W.D. 2015).

 "The UMDDL provides for the prompt disposition of detainers based on untried

state charges pending against a prisoner held within the state's correctional system." State

v. James, 552 S.W.3d 590, 596 (Mo. App. W.D. 2018) (quoting State v. Pugh, 357 S.W.3d

310, 313 (Mo. App. W.D. 2012)). "The term 'detainer' is not statutorily defined, but courts

have defined it as 'a request filed by a criminal justice agency with the institution in which

a prisoner is incarcerated, asking the institution either to hold the prisoner for the agency

or to notify the agency when release of the prisoner is imminent.'" Id. (quoting Pugh, 357

S.W.3d at 313). A detainer puts "prison officials on notice that the inmate is wanted to

 8
 Eckert's claim on appeal that his trial occurred 46 days after the permitted UMDDL time period expired
cannot be reconciled with his claim in the Amended Motion that his trial occurred 31 days after the permitted
UMDDL time period expired. Eckert has not provided an explanation for the discrepancy. However, the variance is
immaterial to our resolution of Eckert's claim that his trial was not timely conducted under the UMDDL.

 9
face pending charges in another jurisdiction upon the inmate's release from prison." Id.

(quoting Pugh, 357 S.W.3d at 313).

 Section 217.450 of the UMDDL provides, in pertinent part, as follows:

 1. Any person confined in a department correctional facility may request a
 final disposition of any untried indictment, information or complaint pending
 in this state on the basis of which a law enforcement agency, prosecuting
 attorney's office, or circuit attorney's office has delivered a certified copy of
 a warrant and has requested that a detainer be lodged against him with the
 facility where the offender is confined. . . .

 2. When the director receives a certified copy of a warrant and a written
 request by the issuing agency to place a detainer, the director shall lodge a
 detainer in favor of the requesting agency. The director shall promptly
 inform each offender in writing of the source and nature of any untried
 indictment, information or complaint for which a detainer has been lodged
 against him of which the director has knowledge, and of his right to make a
 request for final disposition of such indictment, information or complaint on
 which the detainer is based.

If a detainer is lodged,9 and if a confined person properly requests a disposition of the

detainer, then, within 180-days after receipt of the request for disposition of untried charges

for which a detainer has been lodged,10 "the indictment, information or complaint shall be

brought to trial," unless "additional necessary or reasonable time" is granted by the court

 9
 The State argues on appeal that Eckert failed to establish that a detainer was lodged against him, an
essential predicate to the right to request a disposition of detainer. See Pugh, 357 S.W.3d at 313-14 ("Pursuant to
[section 217.450.1], for an inmate to invoke the provisions of the UMDDL, a detainer must have been lodged
against him" and this Court has held that "no de facto detainer arises 'merely from the existence of the warrant' and
that '[n]otice of the warrant, by itself, [does] not constitute a detainer.'" (quoting Greene v. State, 332 S.W.3d 239,
245-46 (Mo. App. W.D. 2010))). It is true that the record on appeal does not contain a copy of a lodged detainer.
However, we note this argument was not raised by the State with the motion court, and as a result, the motion court
made no express finding that a detainer had (or had not) been lodged. Because we conclude that Eckert was tried
within the 180-day UMDDL time period as tolled, we need not address the State's argument that Eckert had no
statutory right to request a disposition of detainer.
 10
 In addition, certifications as required by sections 217.450 and 217. 455 must also have been received.

 10
"for good cause shown in open court, the offender or his counsel being present." Section

217.460.

 However, "[t]he 180–day limit established by the UMDDL is 'not absolute' and there

are notable exceptions and tolling provisions to the 180–day requirement of [s]ection

217.450.1." State v. Jackson, 155 S.W.3d 849, 852 (Mo. App. W.D. 2005) (citation

omitted). "Any delay attributable to a defendant’s affirmative action or agreement is not

included in the period of limitation, and therefore, a continuance granted at a defendant’s

request tolls the 180[-]day period." State v. Henry, 568 S.W.3d 464, 478 (Mo. App. E.D.

2019) (quoting State v. Allen, 954 S.W.2d 414, 417 (Mo. App. E.D. 1997)). Moreover,

section 217.460 provides that a determined violation of the UMDDL will not support

dismissal of an indictment, complaint, or information unless the court also finds "that the

offender's constitutional right to a speedy trial has been denied." See also James, 552

S.W.3d at 597 ("[T]he plain language of the UMDDL mandates the dismissal of a

complaint not brought to trial within 180 days unless the 180-day period is tolled, and if

the court finds that the offender's constitutional right to a speedy trial has been denied."

(quoting State v. McKay, 411 S.W.3d 295, 302 (Mo. App. E.D. 2013) (emphasis in

original))).

 Eckert's Request for Disposition was received by the trial court and the prosecutor's

office on October 15, 2013. Eckert's case was thus required to be tried by April 13, 2014

in order to comply with the 180-day UMDDL time period. Eckert's case was not tired,

however, until July 18, 2014, 276 days after his Request for Disposition, and 96 days

beyond the 180-day UMDDL time period.

 11
 Eckert concedes that 49 days of this 96-day delay is attributable to the combined

effect of his requests for a continuance on December 10, 2013, and January 14, 2014.

Eckert further concedes that because tolling of the UMDDL time period by 49 days would

have resulted in a deadline for trial that fell on Sunday, June 1, 2014, an additional day of

delay is attributable to him such that the total time tolled would be 230 days. By this

calculation, Eckert's trial should have commenced on or before June 2, 2014. Because

Eckert's trial did not occur until July 18, 2014, Eckert contends his trial was conducted 46

days after the tolled 230-day period expired.

 The State argues that the 180-day UMDDL time period also tolled for an additional

115 days chargeable to Eckert because of the motion to dismiss he filed on January 27,

2014. The State contends that Eckert's scheduled trial was unable to proceed on January

28, 2014, and was delayed until at least May 23, 2014, the day the trial court denied Eckert's

motion to dismiss. If the UMDDL time period is tolled by this additional 115 days, then

Eckert's July 18, 2014 trial occurred well within the UMDDL time period.

 Eckert acknowledges that his motion to dismiss was filed, but disagrees that the time

permitted to brief the motion, and then for the trial court to decide the motion, is chargeable

to him. Specifically, Eckert argues that the 115-day period between January 28, 2014, and

the trial court's disposition of the motion to dismiss on May 23, 2014, should not have

tolled the UMDDL time period because the trial court's docket entry permitting time to

brief the motion to dismiss used the word "may," so that the delay for briefing was "not

'actually necessary' due to his or his attorney's actions."

 12
 Eckert relies on State v. Galvan, 795 S.W.2d 113, 118-19 (Mo. App. S.D. 1990),

where a defendant's trial was scheduled for May 19, 1989, but the defendant filed a motion

for continuance on May 1, 1989. "Defendant concede[d] the delay commencing May 1,

1989—the day his application for continuance was granted—[was] chargeable to him. He

argue[d], however, that he should be charged with only the period from May 1 to 19, 1989."

Id. at 118. The Southern District agreed because when the trial court granted the motion

for continuance, it did not immediately reschedule the trial but instead waited until July 3,

1989, to do so, and then scheduled the trial for December 13, 1989. Id. at 118-19. The

Southern District held that where "a delay is actually necessary because of a motion filed

by the accused, the delay is excludable" from the UMDDL time period, but because the

record lacked "any explanation for the delay except that no earlier date was available on

the judge's calendar," only the time prior to May 19, 1989 should have tolled the UMDDL

time period. Id. (citing State v. Smith, 686 S.W.2d 543, 547-48 (Mo. App. S.D. 1985)).

 Eckert argues that as in Galvan, there is no explanation in the record for the 115-

day delay between the motion hearing on January 28, 2014, and the date the trial court

denied the motion on May 23, 2014. We disagree. The record does contain an explanation

for the delay, and also reflects Eckert's unequivocal agreement to the delay. The State

asked for permission to submit a written brief addressing Eckert's motion to dismiss before

being required to argue the motion. Eckert's counsel immediately volunteered, "[a]nd I

 13
have no objection to that." Later, the trial court asked, "do you agree we'll allow 30 days

for briefing?" and Eckert's counsel responded, "I do."11 Then, the trial court stated:

 I'll find the State will provide its brief within 30 days and then make a docket
 entry requiring the defendant to provide any brief that he wants to within 30
 days after that.

Eckert's counsel affirmatively said, "That would be fine with me, Your Honor." That

agreement was followed by the trial court's inquiry of Eckert himself, who also expressed

his agreement. "Any delay of a prisoner's trial which results from his affirmative action or

agreement is not to be included in the period of limitation." State v. Overton, 261 S.W.3d

654, 660 (Mo. App. S.D. 2008).

 Eckert also relies on Murphy v. Smith, 138 S. Ct. 784 (2018), to contend that the

delay after he filed his motion to dismiss was not actually necessary because of the word

"may" in the trial court's docket entry. In Murphy, the United States Supreme Court

analyzed the old and new versions of a statute governing the award of attorney's fees in

civil rights actions and concluded that Congress replaced discretionary words such as

"may" with mandatory words such as "shall" in order "to restrain, rather than replicate, the

discretion found" in the original statute. Id. at 789. Eckert's reliance on Murphy misses

the mark. Even accepting that the word "may" signifies a discretionary act or requirement,

Eckert's argument ignores that the trial court instructed the parties during the January 28,

2014 hearing that "if either party decides to waive briefing, just let us know, and at that

point I'll consider [the motion to dismiss] under advisement and move ahead." Eckert did

 11
 The Amended Motion did not argue that trial counsel was ineffective for effectively agreeing to a
continuance of his January 28, 2014 to allow briefing of, and time for the trial court to consider the merits of, his
motion to dismiss, which raised a novel substantive issue.

 14
not waive briefing, and instead took full advantage of the time the trial court permitted for

briefing, repudiating his argument that a delay to permit briefing was not necessary.

 At a minimum, therefore, the 60-day time period permitted by the trial court for the

parties to file briefs addressing Eckert's motion to dismiss, which time period was

affirmatively agreed to by Eckert, tolled the UMDDL time period from 230 days to 290

days, requiring Eckert's trial to occur on or before August 1, 2014. Because Eckert's July

18, 2014 trial occurred before that date, he was tried within the time permitted by the

UMDDL.12

 Though unnecessary to this conclusion, it is noteworthy that after the trial court

denied Eckert's motion to dismiss, and the parties appeared to set a new trial date on June

10, 2014, both the State and Eckert openly addressed the need to secure a prompt trial

setting, in plain reference to Eckert's Request for Disposition. During that hearing, when

the trial court asked how far out the parties wished to set the matter for trial, the State

advised, "we need to set it quickly," and then said "I really do think we need to set it in

July." Eckert's counsel then said "I believe we have less than 60 days left," a statement

that had no meaning other than to suggest that Eckert's counsel believed that time remained

to permit a trial to occur in compliance with the UMDDL. Eckert's counsel then agreed to

a July 18, 2014 trial date. It is disingenuous for Eckert to now contend that by the time of

 12
 As such, we need not address the effect of the fact that the State's brief addressing Eckert's motion to
dismiss was filed 18 days after the 30-day period permitted by the trial court, and Eckert's responsive brief was filed
9 days after the 30-day period permitted by the trial court. Nor are we required to address the fact that the trial court
took 28 days to rule on Eckert's motion to dismiss after it was deemed taken under advisement by the completion of
briefing, or the fact that after the motion to dismiss was ruled on May 23, 2014, the trial court did not require the
parties to appear to set a new trial date until June 10, 2014, another 18-day delay.

 15
the June 10, 2014 hearing, the UMDDL time period had already expired. See Oden v.

State, 320 S.W.3d 198, 201 (Mo. App. E.D. 2010) ("Movant filed a motion for change of

venue, a motion for a continuance, a motion to suppress, and finally, Movant agreed to a

trial date. These actions resulted in excludable periods, and the time attributable to the

State for bringing Movant to trial was within the 180–day time limit.").

 Finally, even if Eckert could establish a UMDDL violation, which he cannot, he

would not have been entitled to dismissal of his charges unless he could also establish that

the UMDDL violation resulted in the denial of his constitutional right to a speedy trial.

James, 552 S.W.3d at 597. "A defendant's right to a speedy trial comes from the Sixth

Amendment to the United States Constitution, which applies to the states via the Fourteenth

Amendment." State v. Davis, 607 S.W.3d 795, 799 (Mo. App. W.D. 2020) (citing State ex

rel. Garcia v. Goldman, 316 S.W.3d 907, 910-911 (Mo. banc 2010)). "Article I, Section

18(a) of the Missouri Constitution also guarantees a 'speedy public trial,' and the two

provisions 'provide equivalent protection for a defendant's right to a speedy trial.'" Id.

(quoting State ex rel. McKee v. Riley, 240 S.W.3d 720, 729 (Mo. banc 2007)). Determining

whether a violation of the constitutional right to a speedy trial has occurred requires us to

balance four factors: "(1) the length of the delay; (2) the reason for the delay; (3) the

defendant's assertion of the right; and (4) the prejudice to the defendant resulting from the

delay." Id. at 800 (citing Barker v. Wingo, 407 U.S. 514, 530 (1972)).

 The Amended Motion made absolutely no reference to whether Eckert could

establish a violation of his constitutional right to a speedy trial by virtue of a purported

violation of the UMDDL. And our review of the record indicates that no evidence was

 16
presented, nor argument made, to the motion court suggesting that Eckert could establish

a violation of his constitutional right to a speedy trial by virtue of a purported violation of

the UMDDL, a conclusion that is reinforced by the fact that the motion court's Judgment

made no findings or conclusions addressing the subject. Although the argument portion of

Eckert's brief contends that Eckert's constitutional right to a speedy trial was violated by

the purported violation of the UMDDL, this new argument is not preserved for our review,

and is not subject to plain error review. Mallow v. State, 439 S.W.3d 764, 769-70 (Mo.

banc 2014) (holding that grounds for relief not raised in a post-conviction motion are

waived, cannot be raised for the first time on appeal, and are not subject to plain error

review). Because an essential predicate to Eckert's ability to secure dismissal of his charges

was not raised in the Amended Motion, Eckert cannot demonstrate that trial counsel's

failure to move to dismiss his charges based on an alleged UMDDL violation resulted in

Strickland prejudice as a matter of law.

 Eckert has not established a UMDDL violation, and failed in any event to allege in

the Amended Motion that a UMDDL violation resulted in the violation of his constitutional

right to a speedy trial based on an analysis of the Barker factors. The motion court did not

clearly err in denying Eckert's claim that he received ineffective assistance of counsel

because trial counsel did not file a motion to dismiss his victim tampering charges due to

a violation of the UMDDL.

 17
 Conclusion

 The motion court's Judgment is affirmed.

 __________________________________
 Cynthia L. Martin, Judge

All concur

 18